**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MITCHELL HIGGINS and TIM MCHENRY, individually and on behalf of similarly situated individuals,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 23 C 5611** |
| **YAMAHA MOTOR CORPORATION, U.S.A. and NIELSEN ENTERPRISES, INC.,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Mitchell Higgins and Tim McHenry have sued Yamaha Motor Corporation, USA and Nielsen Enterprises, Inc. Higgins and McHenry claim that Nielsen and Yamaha knowingly marketed and sold them each a Yamaha WaveRunner with a defective fuel gauge and trip computer. Higgins and McHenry allege that in so doing Yamaha and Nielsen violated the Illinois Consumer Fraud Act, Yamaha committed common law fraud and breached its written warranty, and Nielsen breached the implied warranty of merchantability. Yamaha and Nielsen have moved to dismiss all of the plaintiffs' claims. For the reasons below, the Court grants their motions.

**Background**

In 2022, Higgins and McHenry each purchased a new 2022 Yamaha FX Cruiser HO FX1800F-XA personal watercraft (WaveRunner) from Nielsen Enterprises, Inc.

Yamaha designed and manufactured the WaveRunner.  Nielsen is an authorized Yamaha dealer.  Higgins paid $23,190 for his WaveRunner and took delivery of it on May 14, 2022.  McHenry paid $21,576.79 for his WaveRunner and took delivery of it on October 22, 2022.  They both placed the orders for their WaveRunners months in advance.  Nielsen provided Higgins and McHenry each a hard copy of the Yamaha owner's manual at the time of purchase.  The plaintiffs also received a written one-year warranty from Yamaha that covered material and workmanship defects with their watercraft.

 Before making their purchases, Higgins and McHenry both reviewed the WaveRunner's specification information and advertising material on Yamaha's website.  WaveRunners are marketed as luxury watercraft with a fuel capacity of 18.5 gallons.  Higgins purchased this model of WaveRunner intending to tour large bodies of water, and McHenry similarly made his purchase intending to go on long excursions.

Upon first riding their watercraft, Higgins and McHenry each discovered defects with the WaveRunner's fuel gauge and trip computer.  The fuel gauge would read full for one to two hours of riding and then would drop off to read near zero even though the tank was still approximately 50-55% full.  The gauge would then drop to "empty" when the tank was 40-45% full, and a loud low fuel warning alarm would sound.  Once the WaveRunner's fuel alarm sounds, it cannot be silenced for the return trip to shore, and the computer software for the dash locks the touchscreen if there is any throttle input.  The alarm is distracting and impairs the rider's ability to hear other alarms to maintain the situational awareness needed to avoid collisions.  The plaintiffs also allege, on information and belief, that the WaveRunner cannot actually hold 18.5 gallons of fuel.

Higgins and McHenry also claim the trip computer screen is defective. The trip computer screen displays the distance traveled and gallons of fuel consumed. When the WaveRunner is turned off for a short period of time, for example when the rider takes a snack break, the gallons used resets back to zero when it is restarted. Higgins and McHenry claim this makes it impossible to track the total distance traveled and fuel consumed if the rider takes a short break.

Because of these issues, Higgins and McHenry say, they must open the fuel tank to determine whether there is any fuel left, and the WaveRunners can be used safely for only half of their designed range. Rather than touring large bodies of water, Higgins is limited to riding around a marina, close to shore. McHenry has also been unable to take the long trips he intended and alleges he must wear earplugs because the fuel alarm cannot be silenced.

The plaintiffs consulted their owners' manuals when they had questions about the features, operations, or care of their watercraft. They understood the manual to contain the specifications of the watercraft, instructions for maintenance and use, and all appropriate warnings and limitations regarding the make and model of their WaveRunners. The manual does not warn that the fuel alarm will sound when the tank is 40-45% full. It says that "[t]he fuel level meter shows the amount of fuel remaining in the fuel tank using the number of display segments. If the amount of remaining fuel is low, the fuel level meter is displayed in red." Am. Compl., Ex. B at 42. It also says that "[w]hen the fuel level is low, the fuel meter changes to red, and a buzzer sounds intermittently" and instructs the drier to "refill the fuel tank as soon as possible" if the fuel warning is activated. *Id*. at 64.

Nielsen is Yamaha's agent for the purpose of performing warranty repairs, and Higgins requested repairs from Nielsen on multiple occasions within one year of taking delivery. Nielsen advised that it was familiar with the fuel gauge problem and that Yamaha did not have a solution. Higgins also submitted a complaint about the fuel gauge to the Better Business Bureau, and Yamaha responded that it was "working diligently on a fix for the fuel gauge concern" and that a Yamaha representative would contact him to discuss his concerns in depth. Am. Compl., Ex. E. No one from Yamaha followed up with Higgins.

McHenry also reached out to Yamaha regarding the issues with his WaveRunner on three occasions. Yamaha stated they would reach out about his complaints but did not do so. He also contacted Nielsen about the issues, but they were unable to fix them.

The plaintiffs say they "do not know whether the problem is caused by the design or manufacture of the watercraft and/or its components," Am. Compl. ¶ 12, but they allege that if proper materials had been used and manufacturing standards followed, the fuel gauges and trip screens would not have been defective. They allege that Yamaha knew of the fuel gauge problem before their WaveRunners were manufactured and that dozens of other purchasers have voiced similar complaints online.

Higgins and McHenry have brought suit on behalf of themselves and others similarly situated, alleging that Yamaha and Nielsen violated the Illinois Consumer Fraud Act, that Yamaha committed common law fraud by misleading statement or half-truth and breached its written warranty, and that Nielsen breached the implied warranty of merchantability. Yamaha and Nielsen have moved to dismiss all of the plaintiffs'

4

claims.

**Discussion**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws reasonable inferences in the plaintiff's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). To survive, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Lanahan v. County of Cook*, 41 F.4th 854, 861 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal quotation marks omitted).

**A.    Breach of written warranty**

In Count 1, Higgins and McHenry argue that Yamaha has breached its written warranty because it is unable to repair the fuel gauges in their WaveRunners. The warranty states, in relevant part, that "new Yamaha WaveRunner watercraft purchased from an authorized Yamaha WaveRunner Watercraft Dealer in the United States (excluding its territories) will be free from defects in material and workmanship" for one year from the date of purchase. Am. Compl., Ex. A.

The Seventh Circuit has held that warranties for "material and workmanship" do not cover design defects. *See Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516, 520, 527* (7th Cir. 2003). As such, Yamaha contends that Higgins and McHenry have alleged, at most, a design defect that is not covered by the written warranty. In their

complaint, the plaintiffs have stated only that they "do not know whether the problem is caused by the design or manufacture of the watercraft and/or its components." Am. Compl. ¶ 12. And in their brief, they argue that it is "entirely possible that the [sic] all of the affected watercraft had defective or badly-made parts relating to the fuel gauge installed." Pls.' Resp. to Def.'s Mot. to Dismiss at 12. But though it may be possible, Higgins and McHenry point to no alleged facts that tend to support that possibility or otherwise suggest that the fuel gauge is a departure from the intended design. This is not enough to withstand a motion to dismiss. "Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp.*, 550 U.S. at 570.

**B.    Breach of implied warranty**

The Court next addresses Count 2, the plaintiffs' claim for breach of implied warranty. In Illinois, "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314. To state a claim for breach of the implied warranty of merchantability, a plaintiff must plausibly allege that the goods were not of merchantable quality at the time of sale. For goods to be merchantable, they must, among other things, "pass without objection in the trade under the contract description," be "fit for the ordinary purposes for which such goods are used," and "conform to the promises or affirmations of fact made on the container or label if any." *Id.* Higgins and McHenry contend that Nielsen breached the implied warranty because it sold the WaveRunners despite knowing that the fuel gauges and trip computers did not work.

Nielsen argues that the plaintiffs' claim should be dismissed because they have

failed to allege what the ordinary purpose of the WaveRunner is, and, in the alternative, that they have not plausibly alleged that the WaveRunners are unfit for that purpose. The plaintiffs contend that they did plead the ordinary purpose, as they stated that it is a personal watercraft, and that "[t]he watercraft are advertised as fuel-efficient 'luxury' line craft meant for touring larger bodies of water."  Am. Compl. ¶ 21.  Though the complaint repeatedly states that it was their particular purpose to use their WaveRunners to tour large bodies of water and take longer trips, the plaintiffs have not plausibly alleged facts sufficient to support an inference that the *ordinary* purpose of the WaveRunner is to tour large bodies of water.  For example, Higgins and McHenry allege that the WaveRunner's fuel tank is supposed to hold 18.5 gallons of fuel, but they make no representations about the distance that can be traveled on a single tank or any other features that indicate the ordinary purpose of the watercraft is to tour large bodies of water.  They directly quote a Yamaha advertisement that describes the watercraft as "[t]he pinnacle of personal watercraft luxury – Engineered to redefine your expectations of premium watercraft experiences, the FX Series combines unparalleled performance, cutting-edge technology, and superior craftsmanship . . .," Am. Compl. ¶ 22, but this likewise includes nothing to support the conclusion that the ordinary purpose of the WaveRunner is to tour large bodies of water.

Even if the Court were to conclude that the plaintiffs have adequately alleged a more general ordinary purpose unrelated to a particular distance, such as "recreational boating," or "being a personal watercraft," Higgins and McHenry have not plausibly alleged that the WaveRunner is unfit for that purpose.  They contend that the fuel alarm creates safety concerns, but they have also alleged that they can use 55-60% of the

gas in the tank riding without issue before the fuel alarm begins to go off. Indeed, Higgins says he still uses the WaveRunner for "riding around the marina, close to shore," Am. Compl. ¶ 45, and McHenry says he wears earplugs due to the fuel alarm, which indicates that he likewise continues to ride his WaveRunner.

Under these circumstances, the Court cannot conclude that Higgins and McHenry have plausibly alleged that their WaveRunners were not in merchantable condition at the time of sale. Accordingly, the Court dismisses Count 2.

## C.    Fraud

In Counts 3 and 4, Higgins and McHenry allege that the defendants are liable for statutory and common law fraud. Generally, fraud claims are subject to the higher pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), the complaint must "specifically allege the who, what, when, where, and how of the fraud" to withstand a motion to dismiss. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (internal quotation omitted).

### 1.    Illinois Consumer Fraud Act

To state a claim for fraud under the ICFA, Higgins and McHenry must allege "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (internal quotation marks omitted).

8

For ICFA claims, "deceptive conduct is distinct from unfair conduct. A claim under the Consumer Fraud Act may be premised on either (or both), but the two categories have different pleading standards." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). If the claim is based on deceptive conduct, then the Rule 9(b) pleading standard applies. But a plaintiff may also allege the conduct is unfair without alleging it is deceptive, in which case "Illinois courts consider three factors: whether it 'offends public policy'; is 'immoral, unethical, oppressive, or unscrupulous'; or 'causes substantial injury to consumers.'" *Id.* at 739 (quoting *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014)). The factors are considered holistically— "a plaintiff need not satisfy all three." *Id.* For example, a practice can be unfair due to the degree to which it meets one criterion, or because it meets all three to a lesser extent. *Id.* "And because fraud is not a required element, Rule 9(b)'s heightened pleading standard does not apply" when the plaintiffs assert an unfair conduct claim. *Id.*

Higgins and McHenry allege that both Yamaha and Nielsen violated the ICFA. They argue that it was deceptive *and* unfair for Yamaha to promote the sale of the WaveRunner as a "luxury" watercraft capable of touring large bodies of water even though it had a defective fuel gauge and trip computer screen without disclosing those defects. They also allege that the owner's manual is a direct communication by Yamaha to new and used watercraft purchasers and that the affirmations and descriptions within it "are part of what is being sold and became part of the basis of the bargain with respect to both Yamaha and Nielsen." Am. Compl. ¶ 67. The plaintiffs thus claim the defendants made both affirmative misrepresentations and omitted facts.

Higgins and McHenry have not plausibly alleged, consistent with Rule 9(b), an

affirmative misrepresentation that can sustain their claim for relief. First, assertions by Yamaha that the WaveRunners are "luxury" watercraft do not rise to the level of deceptive factual misrepresentations that can justify relief. Rather, they amount to puffery. "Puffing in the usual sense signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable as fraud." *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 73, 879 N.E.2d 910, 926 (2007) (quoting *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999)). The Illinois Supreme Court has made clear that "general statement[s] that one's products are best is not actionable as a misrepresentation of fact." *Id.* (quoting *Avery v. State Farm Mutual Auto. Ins. Co.*, 216 Ill. 2d 100, 174, 835 N.E.2d 801, 846 (2005)). Indeed, the Court has identified as puffery descriptive phrases like "high-quality," "expert workmanship," "custom quality," "perfect," "magnificent," "comfortable," and "picture perfect." *Id.* Assertions that a product is "luxury" are of similar import and thus cannot sustain a claim for relief.

Second, the Court notes that although it is possible that the affirmations and representations in the owner's manual could be viewed as a direct communication from Yamaha to watercraft purchasers, those statements also fail to sustain a fraud claim against either defendant. To support an ICFA claim, "the representation must have been made to [the plaintiff] before the purchase of the merchandise." *Camasta*, 761 F.3d at 738. The earliest point at which Higgins and McHenry say they received the owner's manual was at the time of purchase. They do not allege that they received or reviewed the owner's manual at any time before that.

Next, the Court turns to Higgins and McHenry's assertion that the

10

misrepresentation at issue is the "information center" on each watercraft, which includes the fuel level meter. They contend that the "information center" is obvious upon looking at the watercraft or any picture of it and the fuel level meter's presence is a representation that the watercraft has a device that measures the fuel level. In the plaintiffs' view, if the watercraft "does not have such a device, or it doesn't do what it appears to do, there is a misrepresentation by conduct." Pls.' Resp. to Defs.' Mot. to Dismiss at 6-7.

The Court is not satisfied that the mere existence of a visible fuel panel is sufficient to sustain the plaintiffs' ICFA claims. The Illinois Supreme Court has "repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions." *De Bouse v. Bayer*, 235 Ill. 2d 544, 555, 922 N.E.2d 309, 316 (2009). And thus, "[u]nder the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose." *Darne v. Ford Motor Co.*, No. 13 C 3594, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) (citing *De Bouse*, 235 Ill. 2d at 555, 922 N.E.2d at 316). The presence of the fuel level meter on the WaveRunner does not constitute a communication with the plaintiffs from which consequential information has been omitted, and the plaintiffs have alleged no deceptive conduct that renders its presence on the information center fraudulent.

For the same reasons, the Court concludes that Higgins and McHenry's contention that Nielsen is liable under the ICFA for displaying the watercraft, which had a fuel level meter on it, also lacks merit. The Court also notes that the complaint itself includes no allegations that Nielsen actually did display the watercraft or that either

11

plaintiff viewed the watercraft or information center while it was being displayed prior to purchase.

Finally, the Court turns to the plaintiffs' bare allegation that Yamaha's conduct was "*unfair* and deceptive," Am. Compl. ¶ 101 (emphasis added). "Simply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that [a plaintiff's] allegations are entirely grounded in fraud under the ICFA." *Camasta*, 761 F.3d at 737. In this case, the plaintiffs have done not even that—beyond including the language of unfairness once in their complaint, they have made no attempt to develop the argument that Yamaha's conduct was unfair in their complaint or in their briefing. As a result, they have forfeited this argument.

For these reasons, the Court dismisses Higgins and McHenry's ICFA claim.

### 2. Fraud by misleading statement or half-truth

In Illinois, generally a fraud claim requires "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996). But a defendant may also be liable for common law fraud if they "concealed a material fact" while "under a duty to disclose that fact to plaintiff." *Id.* at 500, 675 N.E.2d at 593. "[A] duty to disclose may arise under Illinois law if the defendant makes an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading 'half-truth.'" *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009).

Higgins and McHenry argue that Yamaha had a duty to disclose the alleged defects with the fuel gauge. They contend that Yamaha "made statements about a fuel gauge by placing it on the watercraft and made statements in the manual that was intended to explain its operation to the ultimate user." Pls.' Resp. to Defs.' Mot. to Dismiss at 11. But as described previously, the plaintiffs have not alleged that they accessed any statements in the owner's manual prior to purchasing the WaveRunners. Accordingly, the plaintiffs have not plausibly alleged that those statements provide a basis for their common law fraud claim. This leaves only their argument that the presence of the fuel gauge itself was a statement on its own and that it amounted to a misleading half-truth. The plaintiffs have not plausibly alleged that the mere presence of the fuel level monitor rises to the level of an affirmative statement being "passed off as the whole truth while omitting material facts." *Crichton*, 576 F.3d at 398.

As a result, the Court dismisses Higgins and McHenry's common law fraud claim.

## Conclusion

For the foregoing reasons, the Court grants the motions to dismiss [dkt. nos. 27, 34]. Unless the plaintiffs file, by August 13, 2024, a motion for leave to amend attaching a proposed amended complaint stating at least one viable claim over which the Court has subject matter jurisdiction, the Court will dismiss the case with prejudice. A telephonic status hearing is set for August 20, 2024 at 9:05 a.m., using call-in number 650-479-3207, access code 980-394-33.

MATTHEW F. KENNELLY
United States District Judge

Date:  July 23, 2024

13