IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MITCHELL HIGGINS, <br> and TIM MCHENRY, <br> individually and on behalf of the class <br> members described herein, <br><br> Plaintiffs, <br><br> -vs- <br><br> YAMAHA MOTOR <br> CORPORATION, USA and <br> NIELSEN ENTERPRISES, INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No.: 1:23-cv-05611 <br><br> Judge Matthew F. Kennelly |

**PLAINTIFFS' MOTION FOR LEAVE TO
FILE SECOND AMENDED COMPLAINT**

Plaintiffs Mitchell Higgins and Tim McHenry respectfully request leave of Court to file the Second Amended Complaint, attached hereto.

In support of this motion, Plaintiffs state:

1. Plaintiffs disagree with much of the Court's July 23, 2024 opinion (Doc. 49).

2. However, Plaintiffs have revised their allegations in a manner that satisfies the Court's requirements.

3. For example, with respect to breach of the written warranty, the Court focused on Plaintiffs' statement that they do not know whether the problem is one of design or manufacture, which it concluded made the claim insufficient to "nudge[] their claims across the line from conceivable to plausible." (Doc. 49, p. 6 of 13) The Court cited a case in which the plaintiff conceded that the problem was a design defect, *Voelker v. Porsche Cars N. Am., Inc.,* 353 F.3d 516,

1

520, 527 (7th Cir. 2003).  There, the plaintiff alleged that the vehicle's airbag sensor system was designed to not deploy airbags when the vehicle was impacted in the driver's door at 25 mph and that this was an unreasonable design choice.  Unreasonable or not, that was how they were designed to function.  (353 F.3d at 526-27)

    4.    Plaintiffs believe that the Court's ruling is incorrect because a consumer purchaser of an complex mechanical device such as an automobile or watercraft is not expected to know more than that it does not function properly.  "A prima facie case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed to perform in the manner reasonably to be expected in light of [its] nature and intended function."  *Tweedy v. Wright Ford Sales, Inc.*, 64 Ill. 2d 570, 574,  357 N.E.2d 449, 452 (1976).  Failure to function properly is indicative of  "a departure from the intended design."  (Doc. 49, p. 6 of 13)   Here, the fuel gauge issue that numerous purchasers have complained about is not normal, and the complaints show that the product fails to perform in the manner reasonably to be expected.

    5.    In any event, Plaintiffs now allege that:

        a.    Yamaha represented that it was working on rectifying the problem, which indicates that Yamaha believed it to be a matter covered by its written warranty;

        b.    That eventually, in 2024, Yamaha devised a fix to attempt to mitigate the problem.

        c.    That the problem was a defect in material or workmanship.

    6.    The Court dismissed the implied warranty claim on the ground that Plaintiffs "make no representations about the distance that can be traveled on a single tank or any other features that

indicate the ordinary purpose of the watercraft is to tour large bodies of water." (Doc. 49, p. 7 of 13)

7. Plaintiffs now allege that various makes and models of personal watercraft have stated fuel capacities of between 4.75 and 20 gallons, that the 18.5 gallons in the WaveRunner is thus one of the largest capacities available, that fuel capacity translates into range / duration of use, and that a watercraft with an 18.5 gallon tank, as opposed to, e.g., one with a 4.75 gallon tank, is intended to tour larger bodies of water.

8. The Court also stated in dismissing the implied warranty claim that it is still possible to use the WaveRunner for shorter trips. (Doc. 49, pp. 7-8 of 13) However, a key aspect of the implied warranty of merchantability is that goods pass without objection in the trade under the contract description, which includes the specifications stating that the WaveRunner has a fuel capacity of 18.5 gallons. If only half of that capacity can be used, the watercraft does not pass without objection under the contract description.

9. The Court dismissed the consumer fraud and common law fraud claims on the ground that statements that Yamaha's watercraft is a "luxury" craft suitable for touring large bodies of water are "puffing."

10. Plaintiff have revised these claims to focus on the very specific representation that the fuel capacity of the watercraft is 18.5 gallons, which conveys that the purchaser has the benefit of such fuel capacity and corresponding range, which is not the case. This representation is on Yamaha's website, both independently and as part of the manual (which is on the website), and also on Nielsen's website.

11. The granting of a Rule 12(b)(6) motion should normally result in dismissal of the complaint, not the action, where the dismissal is based on what has been pleaded and the plaintiff

3

tenders a complaint that satisfies the Court's ruling. *Redfield v. Continental Cas. Corp.*, 818 F.2d 596 (7th Cir. 1987); *Parr v. Great Lakes Express Co.,* 484 F.2d 767 (7th Cir. 1973); *APP Grp. (Can.) Inc. v. Rudsak USA Inc.,* No. 22-1965, 2024 U.S. App. LEXIS 554, at *11 (2d Cir. Jan. 9, 2024) ("We have been particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue, reasoning that [w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies. . . "); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (finding it improper to provide plaintiffs with "a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead"); *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) (holding that the district court erred in denying leave to amend when it "granted the defendant's motion to dismiss, identif[ied] the flaws it found in [plaintiff's] complaint, and denied [plaintiff] leave to replead, faulting him for having failed to submit a proposed amended complaint in the time between the defendant's motion to dismiss and the court's ruling on it.").

WHEREFORE, the Court should grant leave to file the Second Amended Complaint.

Respectfully submitted,

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Lucas M. Coughlin
**EDELMAN, COMBS, LATTURNER**
   **& GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841

4

(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

T:\39337\Pleading\Plaintiff's Motion for leave to file 2d amd cmplaint_Pleading.WPD

**CERTIFICATE OF SERVICE**

      I, Daniel A. Edelman, hereby certify that on Monday, August 13, 2024, I caused a true and accurate copy of the foregoing document to be filed via the court's CM/ECF online system, which sent notice via email to all counsel of record.

                                                       /s/ *Daniel A. Edelman*
                                                         Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Lucas M. Coughlin
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com