**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MITCHELL HIGGINS; and TIM MCHENRY, individually and on behalf of similarly situated individuals, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:23-cv-05611 |
| | ) | |
| v. | ) | Honorable Matthew F. Kennelly |
| | ) | |
| YAMAHA MOTOR CORPORATION, U.S.A.; and NIELSEN ENTERPRISES, INC., | ) ) ) | |
| | ) | |
| Defendants. | | |

<br><br>

## OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

**<u>Page</u>**

I.     INTRODUCTION ................................................................................................. 1

III.    BACKGROUND ................................................................................................. 2

III.    LEGAL STANDARDS ...................................................................................... 3

II.    ARGUMENT ...................................................................................................... 3

    A.    Plaintiffs still allege only a design defect that is not covered by their warranty. .................................................................................................. 3

    B.    Plaintiffs still have not alleged the ordinary purpose of their WaveRunners and offer only implausible legal conclusions in their proposed amendments to the allegations relating to their implied-warranty claim.............. 8

    C.    Plaintiffs still do not point to any false statements to support their fraud claims. ................................................................................................... 12

III. CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................6

*Baldwin v. Star Sci., Inc.*,
   78 F. Supp. 3d 724 (N.D. Ill. 2015) ...............................................................8, 12

*Barbara's Sales, Inc. v. Intel Corp.*,
   227 Ill. 2d 45 (2007) ............................................................................................13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 554 (2007)................................................................................................4

*Bestwick v. Newmar Corp.*,
   576 F. Supp. 3d 599 (N.D. Ind. 2021) ..................................................................5

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ..............................................................................12

*Bober v. Glaxo Wellcome PLC*,
   246 F.3d 934 (7th Cir. 2001) .........................................................................14, 15

*Bondick v. Ricoh Imaging Americas Corp.*,
   2022 WL 2116664 (N.D. Ill. June 13, 2022) .......................................................7

*Bullseye Telecom, Inc. v. Cisco Sys., Inc.*,
   2010 WL 1814669 (E.D. Mich. May 6, 2010).....................................................5

*DeSalle v. Wright*,
   969 F.2d 273 (7th Cir. 1992) ................................................................................3

*Duthie v. Matria Healthcare, Inc.*,
   254 F.R.D. 90 (N.D. Ill. 2008)..............................................................................3

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ..............................................................................14

*Freund v. HP, Inc.*,
   2023 WL 187506 (N.D. Cal. Jan. 13, 2023) ........................................................7

*Fuchs v. Menard, Inc.*,
   2017 WL 4339821 (N.D. Ill. Sept. 29, 2017) ....................................................14

*Gagetta v. Walmart, Inc.*,
   646 F. Supp. 3d 1164 (N.D. Cal. 2022) ..............................................................12

*Galanis v. Starbucks Corp.*,
   2016 WL 6037962 (N.D. Ill. Oct. 14, 2016)......................................................15

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

*Garcia v. City of Chicago, Ill.*,
  24 F.3d 966 (7th Cir. 1994) ................................................................................... 3

*Haywood v. Massage Envy Franchising, LLC*,
  887 F.3d 329 (7th Cir. 2018) ................................................................................ 12

*Knopick v. Jayco, Inc.*,
  895 F.3d 525 (7th Cir. 2018) ............................................................................ 1, 4, 5

*Krafcky v. Makita U.S.A., Inc.*,
  2024 WL 1376066 (N.D. Ill. Mar. 31, 2024) .................................................... 3, 4, 7

*Nowlin v. Pritzker*,
  34 F.4th 629 (7th Cir. 2022) .................................................................................. 7

*O'Boyle v. Real Time Resols., Inc.*,
  910 F.3d 338 (7th Cir. 2018) .................................................................................. 3

*Pickens v. Mercedes-Benz USA, LLC*,
  2021 WL 5050289 (N.D. Ill. Nov. 1, 2021) ............................................................. 7

*Rudy v. D.F. Stauffer Biscuit Co.*,
  666 F. Supp. 3d 706 (N.D. Ill. 2023) ...................................................................... 8

*Rudy v. Fam. Dollar Stores, Inc.*,
  583 F. Supp. 3d 1149 (N.D. Ill. 2022) .................................................................. 15

*Schwebe v. AGC Flat Glass N. Am.*,
  2013 WL 2151551 (N.D. Ill. May 16, 2013) .......................................................... 15

*Sherwin v. Samsung Elecs. Am., Inc.*,
  2018 WL 11216896 (N.D. Ill. Mar. 2, 2018) ......................................................... 15

*Strauss v. Ford Motor Co.*,
  439 F. Supp. 2d 680 (N.D. Tex. 2006) ................................................................... 11

*Tharpe v. Hyundai Motor Am., Inc.*,
  2022 WL 3137453 (C.D. Cal. July 12, 2022) .......................................................... 11

*Tietsworth v. Sears, Roebuck and Co.*,
  2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ......................................................... 12

*Voelker v. Porsche Cars North America, Inc.*,
  353 F.3d 516 (7th Cir. 2003) .................................................................................. 6

### Statutes

810 ILCS 5/2-314 ....................................................................................................... 8

**TABLE OF AUTHORITIES**
(*Continued*)

Page(s)

**Rules**

Fed. R. Civ. P. 9(b) .......................................................................................................................12

## I.     INTRODUCTION

Plaintiffs have a grievance in search of a legal theory, and their inability to find a legal hook after multiple rounds of pleading and a detailed dismissal order confirms that their proposed amendment is futile.  They disagree with certain design choices made by Yamaha on their WaveRunner personal watercrafts—they say the low-fuel warning on their WaveRunners sounds too soon, and they would prefer that the trip odometer not reset every time they turn off their engines.  As this Court already held, these types of alleged design defects are not covered by the WaveRunners' workmanship-or-material warranty, do not support the proposition that WaveRunners are unfit for their ordinary purpose, and cannot be the basis of a fraud claim.

In their proposed amended complaint, plaintiffs have made minimal tweaks (reflected in the attached redline) that still don't amount to a viable legal theory.  They still have not offered any facts showing that the supposed problems with the WaveRunners are covered defects of workmanship or material.  Plaintiffs' only new allegation in this regard is that Yamaha offered a fix addressing the issue, but the Seventh Circuit has rejected the argument that a defendant's willingness to accommodate customers by repairing claimed defects means warranty coverage has been triggered.  *Knopick v. Jayco, Inc.*, 895 F.3d 525 (7th Cir. 2018).  The proposed amended complaint thus still fails to identify any sort of alleged defect that would be covered by the terms of the limited express warranty.

Nor have plaintiffs alleged anything that could rescue their implied-warranty claim.  Plaintiffs still allege nothing showing the ordinary purpose of a WaveRunner is to "tour large bodies of water."  As plaintiffs' own exhibits show, WaveRunners are designed for near-shore recreation, not travel on the high seas.  And plaintiffs allege no facts showing their WaveRunners are unfit for recreation; to the contrary, they evidently continue to use them for that very purpose.

Plaintiffs have also said nothing to resurrect their fraud claim. Attempting to get around this Court's ruling that the "presence" of a fuel gauge is not an actionable fraudulent statement, plaintiffs now center their fraud allegations on the WaveRunners' specification of an 18.5-gallon fuel tank. The problem is they never actually allege this statement isn't *true*. At most, they allege that it is an inconvenience to use the full capacity of the fuel tank if the low-fuel alarm is sounding, but that alleged inconvenience doesn't provide a basis to sue for fraud.

Because plaintiffs have not been able to identify any facts that could support the elements of their warranty and fraud claims, amendment would be futile. This Court should therefore deny plaintiffs' motion for leave to file a second amended complaint.

### III.    BACKGROUND

Mitchell Higgins and Tim McHenry bought Yamaha WaveRunner watercraft from Nielsen Enterprises, Inc. in 2022 and received a written one-year warranty from Yamaha that covers material and workmanship defects. Dkt. 51-1, Proposed Second Amended Complaint ("SAC") ¶¶ 16, 50, 63. Higgins sued Yamaha for breach of warranty and fraud. Dkt. 1. After Yamaha filed a motion to dismiss the complaint, the Court offered Higgins a chance to amend the complaint "to attempt to deal with some or all of the grounds stated for dismissal." Dkt. 19. Higgins filed a first amended complaint in which he added McHenry as a plaintiff and Nielsen as a defendant, plus a claim for breach of the implied warranty of merchantability against Nielsen. Dkt. 23. Defendants moved to dismiss. Dkts. 27, 34. The Court granted their motions to dismiss in full, cautioning that it would dismiss the case with prejudice unless plaintiffs filed a motion for leave to amend with a proposed amended complaint stating at least one viable claim. Dkt. 49 at 13. Plaintiffs filed a motion for leave to amend with a proposed second amended complaint. Dkts. 51, 51-1. Plaintiffs allege now, as they did before, that their WaveRunners are defective because the

low-fuel warning will sometimes sound when the gas tank still is 40–45% full. SAC ¶¶ 27–30.

## III.  LEGAL STANDARDS

"[T]here are limitations" to the "liberal attitude towards the amendment of pleadings." *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008). Courts deny leave to amend "where repleading would be futile." *DeSalle v. Wright*, 969 F.2d 273, 278 (7th Cir. 1992). It is clear that repleading is futile when plaintiffs restate the same facts using different language, reassert claims already dismissed, fail to state a valid theory of liability, or advance a proposed pleading that would not survive a motion to dismiss. *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994). To decide whether an amendment would be futile, courts apply "the same standard as Rule 12(b)(6) to determine whether the proposal adequately states a claim for relief." *Krafcky v. Makita U.S.A., Inc.*, 2024 WL 1376066, at *3 (N.D. Ill. Mar. 31, 2024). Courts should deny leave to amend where the proposed amendments do not push the claims "into the realm of plausibility." *O'Boyle v. Real Time Resols., Inc.*, 910 F.3d 338, 384 (7th Cir. 2018).

## II.  ARGUMENT

### A.  Plaintiffs still allege only a design defect that is not covered by their warranty.

Plaintiffs' limited warranty states that WaveRunners "will be free from defects in material and workmanship" for one year from the date of purchase. SAC, Ex. A. This Court dismissed plaintiffs' express-warranty claim because "warranties for 'material and workmanship' do not cover design defects," and plaintiffs had not "alleged facts that tend to support" a material or workmanship defect rather than a design defect. Dkt. 49 at 5–6.

Plaintiffs made only three small tweaks to their warranty-related allegations, which don't lead to a different result. Plaintiffs have added that the supposed problem manifested on first use, was a defect in material or workmanship, and that Yamaha devised a fix for the problem. They then rehash two of their previous legal arguments in their motion to amend. These minor changes

to the complaint and stale legal arguments don't amount to a valid warranty claim.

Start with the proposed amendments. Plaintiffs' first new allegation is that "the problem manifested itself upon [the WaveRunner's] first use," which means "these defects had to be present upon leaving the factory." SAC ¶ 35; *see also* Dkt. 51 ¶ 4. But this fact leaves their complaint stuck in neutral; the timing says nothing of the nature of the defect because both a manufacturing and a design defect could be apparent on the first use. *Krafcky*, 2024 WL 1376066, at *4 (plaintiff stated "at most . . . a *design defect* claim" by alleging angle grinder "'was defective when sold'").

Plaintiffs' second new allegation is that "[t]he fuel gauge problem was a defect in material or workmanship." SAC ¶ 49. This is a textbook example of a pure legal conclusion not supported by any well-pleaded facts, which "courts 'are not bound to accept as true.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). Plaintiffs still haven't alleged facts showing that any part of the WaveRunner was incorrectly assembled or constructed with subpar material.

Plaintiffs' third new allegation is that "Yamaha devised a fix to attempt to mitigate the problem," which many users found ineffective. SAC ¶ 48. Internet forum posts attached to plaintiffs' complaint indicate that the "fix" was a software update. SAC, Ex. F at 301–04. Plaintiffs rely on this allegation to argue "[t]he fact that Yamaha claimed that it was working on a fix was an admission that the nature of the problem was one covered by the warranty." SAC ¶ 60. But the Seventh Circuit has already rejected the argument that a company's voluntary decision to provide a fix to its customers defines the scope of a warranty. In *Knopick v. Jayco, Inc.*, the plaintiff controlled a company that bought a luxury RV. 895 F.3d at 527. Unsatisfied with the RV, the plaintiff sued the manufacturer, but the warranty did not cover the RV because it excluded all vehicles purchased by business entities. *Id.* at 527–28. The plaintiff argued that the manufacturer had waived the vehicle's exclusion from the warranty by performing some repairs

at no charge immediately after the purchase, thus treating the vehicle as if it were covered by the manufacturer's warranty. *Id.* at 530. Although the warranty included a clause specifically stating that performing repairs not required by the warranty would not alter the limitations of the warranty, the Seventh Circuit held that plaintiff's argument "would be shaky even without this protective clause." *Id.* The court held that embracing the plaintiff's argument would be untenable because extending legal liability to a "seller that wants to do a good turn for a customer" would "discourage low-cost and amicable resolutions to minor commercial disputes." *Id.* at 531. The court refused to do such damage to business-customer relations. *Id.*

*Knopick* directly controls here. Plaintiffs' argument is the same as the one the Seventh Circuit rejected—that Yamaha's attempt to devise a fix in response to complaints about WaveRunners somehow changed the terms of their written warranty. SAC ¶¶ 48, 60; *see also* Dkt. 51 ¶ 5. The Seventh Circuit held that voluntarily fixing an issue for customers is simply beneficial "commercial lubricant" that "facilitates trust, long-term relationships, repeat customers, and referrals." *Knopick.*, 895 F.3d at 531. The court refused to allow these gestures of good will to be turned into "sword[s] capable of compelling performance and creating new duties." *Id.* Other courts have rejected similar theories. For example, a district court rejected the plaintiffs' argument that a defendant who "altruistically provid[ed] repairs" should be estopped from arguing the non-existence of a warranty. *Bestwick v. Newmar Corp.*, 576 F. Supp. 3d 599, 604–05 (N.D. Ind. 2021). Similarly, another district court found "no persuasive authority for the proposition that a seller's act of making repairs after the expiration of a limited warranty constitutes a waiver of the warranty's limited duration." *Bullseye Telecom, Inc. v. Cisco Sys., Inc.*, 2010 WL 1814669, at *3 (E.D. Mich. May 6, 2010). Nothing compels a different result here.

Plaintiffs' two rehashed legal arguments in their motion for leave to amend are also

5

unavailing. First, plaintiffs claim that *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516 (7th Cir. 2003)—in which the Seventh Circuit affirmed the dismissal of an express-warranty claim because the plaintiff had alleged facts consistent with a design defect, but the warranty covered only workmanship and material defects—is irrelevant because "the plaintiff conceded that the problem was a design defect." Dkt. 51 ¶ 3. But the plaintiff in *Voelker* did not concede there was a design defect; he instead argued that "[t]he failure to operate was either due to the fact that the side air bags are just plain inoperable (a defect in factory-installed material), or because the triggering device is far too low to operate (a design defect), or a combination of the two." Reply Brief for Plaintiff-Appellant, *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516 (7th Cir. 2003), 2003 WL 22752680, at *4–5. It's the same story here. Plaintiffs now drop the allegation that they "do not know whether the problem is caused by the design or manufacture of the watercraft and/or its components," Dkt. 23 ¶ 12, but still assert that the WaveRunners have either "design and/or manufacturing defects," SAC ¶ 55. And even if plaintiffs had completely scrubbed the word "design" defect from their proposed amended complaint, it wouldn't matter because the *Voelker* court's analysis did not turn on whether the plaintiff had used the words "design defect." Instead, the Seventh Circuit analyzed the plaintiff's allegations—that the airbags were "defective and non-conforming," the vehicle had "too few crash sensors or trigger points to work properly," the crash sensors or trigger points were "too low to the ground," and the defect impacted entire model lines—and then concluded that they amounted to a claim for a design defect rather than material defect. *Voelker*, 353 F.3d at 526–27. That is just what the Court did here. Dkt. 49 at 5–6.

Second, plaintiffs argue that they shouldn't be held responsible for knowing whether a defect resulted from a bad design or a bad manufacturing process, Dkt. 51 ¶ 4, but it is plaintiffs' burden to plead facts showing "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*,

556 U.S. 662, 679 (2009). For example, the plaintiffs in *Freund v. HP, Inc.*, 2023 WL 187506 (N.D. Cal. Jan. 13, 2023), also argued that they needed discovery to figure out "whether the alleged defect is a design defect or a manufacturing defect." *Id.* at *5. But the court rejected that argument and dismissed the claims because the plaintiffs did not allege *facts* demonstrating a manufacturing defect. *Id.* To state a claim that opens the gates to discovery, plaintiffs must "move the needle from the possible to the plausible." *Nowlin v. Pritzker*, 34 F.4th 629, 635 (7th Cir. 2022). Thus, courts routinely dismiss claims for breach of express warranty where plaintiffs are unable to plead facts establishing a workmanship or material defect under an express warranty. *See, e.g.*, *Krafcky*, 2024 WL 1376066, at *4 (denying leave to amend); *Bondick v. Ricoh Imaging Americas Corp.*, 2022 WL 2116664, at *5 & n.3 (N.D. Ill. June 13, 2022); *Pickens v. Mercedes-Benz USA, LLC*, 2021 WL 5050289, at *2 (N.D. Ill. Nov. 1, 2021).

In short, plaintiffs still haven't alleged facts showing that the supposed defect in their WaveRunners is one of workmanship or material. Nowhere in the complaint do plaintiffs allege the metal, plastic, or any other materials in their WaveRunners were substandard, or that their WaveRunners were assembled in a way different from any other WaveRunner. What's more, attachments to the complaint show that Higgins himself views the fuel-gauge issue as a design defect: he told the Better Business Bureau that Yamaha has "been doing this to the 2019 and later model years," it was "an intentional design choice" that he viewed as a "design *flaw*," and that "Yamaha did this intentionally because of a prior lawsuit." SAC, Ex. H. And internet forum posts attached to plaintiffs' complaint show that WaveRunner owners and enthusiasts echo his views. One poster wrote "that the 'early' triggering of the low fuel alarm on some newer models was an intentional software change made in response to reports of riders venturing offshore and not monitoring their fuel remaining indicator until it was too late, whereby they ran out of fuel before

reaching land." SAC, Ex. F at 178. Others agreed that "Yamaha sees it as a feature, not a bug." SAC at 178, 179, 254. Another user described it, less charitably, as "a total brain fart by the Yamaha engineers." *Id.* at 189. Users also described the "fix" offered by Yamaha as a software update, which further supports the inference of a design defect. *Id.* at 301–04.

Because plaintiffs evidently have no facts showing that the claimed fuel-gauge defect is covered by their warranties, allowing further revisions to the complaint would be a futile exercise, and the Court should deny the motion for leave to amend.

**B.** **Plaintiffs still have not alleged the ordinary purpose of their WaveRunners and offer only implausible legal conclusions in their proposed amendments to the allegations relating to their implied-warranty claim.**

Plaintiffs sued Nielsen for breach of implied warranty. To state a claim for breach of the implied warranty of merchantability in Illinois, a plaintiff must plausibly allege that the goods were not of merchantable quality at the time of sale. *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 741 (N.D. Ill. 2015). To be merchantable, goods must, among other things, be "fit for the ordinary purposes for which such goods are used." 810 ILCS 5/2-314(2)(c). A breach of the warranty of merchantability occurs only "if the product lacks even the most basic degree of fitness for ordinary use." *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 722 (N.D. Ill. 2023).

In dismissing this claim in the first amended complaint, the Court concluded that "[t]hough the complaint repeatedly states that it was their particular purpose to use their WaveRunners to tour large bodies of water and take longer trips, the plaintiffs have not plausibly alleged facts sufficient to support an inference that the *ordinary* purpose of the WaveRunner is to tour large bodies of water." Dkt. 49 at 7. The Court explained that plaintiffs' allegations—that the fuel tank holds 18.5 gallons of fuel, and that Yamaha advertised the WaveRunner as "[t]he pinnacle of personal watercraft luxury" and as offering "unparalleled performance, cutting-edge technology, and superior craftsmanship"—did "nothing to support the conclusion that the ordinary purpose of

the WaveRunner is to tour large bodies of water." *Id.* The Court further explained that "[e]ven if [it] were to conclude that the plaintiffs have adequately alleged a more general ordinary purpose unrelated to a particular distance, such as 'recreational boating,' or 'being a personal watercraft,' Higgins and McHenry have not plausibly alleged that the WaveRunner is unfit for that purpose." *Id.* The Court highlighted that plaintiffs' complaint made clear that they can use most of the gas in their tanks without issue before the fuel alarm begins to go off, and that they still use their WaveRunners, including for "riding around the marina, close to shore." *Id.* at 7–8.

Plaintiffs have not surmounted these obstacles in their proposed complaint. They still allege that the purpose of WaveRunners is to tour large bodies of water, and they still haven't provided any support for that assertion. Here are the new allegations on which they rely, almost all of which depend on the theory that simply because their WaveRunners can hold 18.5 gallons of fuel, they must be intended for traversing large bodies of water (rather than reducing the number of times refueling is required during near-shore recreation):

- The "contract description includes the specifications stating that [WaveRunners] have a fuel capacity of 18.5 gallons." SAC ¶ 96.

- Specification sheets from the Yamaha and Nielsen websites state: "Fuel Capacity: 18.5 gallons". SAC ¶ 17; SAC Ex. B, C.

- Other makes and models of personal watercraft have fuel capacities between 4.75 and 20 gallons, making the 18.5-gallon capacity of the WaveRunners "one of the larger fuel tanks available." SAC ¶¶ 18–19.

- An 18.5-gallon fuel tank "should be sufficient for a range of 85-100 miles at full speed (50 mph +) and a considerably longer range at cruising speed (20-30 mph)." SAC ¶ 20.

- A Yamaha advertisement headlined "INTRODUCING INTEGRATED SPEAKERS" says, in slightly smaller letters, "PREMIUM COMFORT FOR ALL DAY RIDING," with the following description: "With its Cruiser seat, cavernous storage, premium feature set and 1.8L engine, the FX Cruiser HO is built to explore the water." SAC Ex. E; *see also* SAC ¶ 26.

None of these proposed amendments shows that the ordinary purpose of a WaveRunner is to tour large bodies of water. The allegation that an 18.5-gallon fuel capacity could theoretically

permit a buyer to ride further from shore does not show that the ordinary usage of WaveRunners—or any other personal watercraft—is to tour large bodies of water. Plaintiffs' allegations might support the theory that WaveRunners allow users to enjoy recreational boating for longer than other models before needing to return for gas, but not that they are fit for use traveling across the high seas. A go-kart could have an unusually big gas tank that allows it to operate all day, but nobody would suppose that makes it fit for traveling down the Dan Ryan Expressway.

What's more, plaintiffs' own exhibits disprove their contention that the *ordinary* use of WaveRunners is long-haul riding. The forum posts about personal watercraft in Exhibit F show that WaveRunner owners and enthusiasts don't think WaveRunners should be used to tour large bodies of water. One rider stated that Yamaha made an "intentional software change" because riders were "venturing offshore," "not monitoring their fuel remaining indicator until it was too late," and needed to be rescued. SAC, Ex. F. at 178. Other users questioned the wisdom of those riders. *E.g.*, *id.* at 179, 181, 189, 240. And still others acknowledged that an early fuel warning was a safety "feature, not a bug," designed to deter this risky behavior. *Id.* at 178, 179, 254. Plaintiffs' Exhibit G, a series of posts in a "YAMAHA WaveRunners OWNERS" Facebook group, similarly contains comments that Yamaha "considers this IS the fix from the Florida clown that went offshore, ran out of fuel, had to be rescued and then sued." SAC, Ex. G. at 317, 319.

Plaintiffs also haven't made any changes to allege that the WaveRunner is unfit for "a more general ordinary purpose unrelated to a particular distance, such as 'recreational boating,' or 'being a personal watercraft.'" Dkt. 49 at 7. To the contrary, the proposed complaint still indicates that plaintiffs can use 50 to 60% of the gas in the tank without any issue for "approximately one or two hours of riding." SAC ¶¶ 1, 28, 30. It also still contains allegations that both plaintiffs *are still continuing* to ride their WaveRunners to this day: Higgins continues to ride his WaveRunner

"around the marina, close to shore," and McHenry uses earplugs while riding his WaveRunner to

deal with the low-fuel alarm sound. *Id.* ¶¶ 55, 69. Other posts from Exhibit F confirm that

WaveRunners continue to be suitable for their ordinary purpose of recreation:

- "[T]his is really the only issue holding the FX back from being the nearly perfect ski." SAC, Ex. F at 214.

- "Ski is a monster, good at everything it [is] supposed to do apart from measuring fuel." SAC, Ex. F at 280.

- "[T]he fuel capacity isn't as big of an issue as I thought it is." SAC, Ex. F at 245.

- "I haven't gone to the point that the beeper goes off but the other day I rode until I was at two yellow bars. . . . Assuming the tank holds 17 gal. two bars is about 35% left. That doesn't seem too bad and is similar to how my Kawaski behaved." SAC, Ex. F at 273.

- "I will probably continue with my purchase, disconnect the buzzer and hope someday a fix is offered." SAC, Ex. F at 195.

- "I have a 22 fx svho limited so I do experience this issue however for me personally this is a small price to pay for everything else I love about the ski. I will not be disconnecting the buzzer. I fully understand its a case of each to their own though." SAC, Ex. F at 197.

- "While I haven't yet run my ski to the low fuel alarm, I know my ski does read low." SAC, Ex. F at 207.

- Multiple users also discussed do-it-yourself fixes they devised to deal with the issue, confirming that they are still using their WaveRunners:

  o "I put hydroturf over mine, which quieted it down, but too much I think. I can barely hear it when running about making it inaudible. I think I'll just wire up a switch for this." SAC, Ex. F at 213.

  o "This isn't anywhere near as terrible as it's made out to be, at least on my ski. I did a long ride yesterday and wanted to see how far I could push it." SAC, Ex. F at 267.

  o "If you take a little time and make the effort to really get to know your ski, the stupid fuel gauge and trip meter aren't that big of a deal. I currently have my warning buzzer unplugged . . . . I plan to install a switch so I can manually turn off the buzzer any time I want to." SAC, Ex. F at 294.

It's clear that Plaintiffs and other WaveRunner owners can, and still do, ride their

WaveRunners. Doing so at most requires some adjustments that plaintiffs deem inconvenient, like

using earplugs. But mere inconvenience is not enough to state an implied-warranty claim. *Strauss*

*v. Ford Motor Co.*, 439 F. Supp. 2d 680, 685 (N.D. Tex. 2006) (Plaintiffs must not "equate[]

inconvenience with impossibility."). For example, a car interior's supposedly strong odor isn't a

basis for an implied-warranty claim if the car is still drivable. *Tharpe v. Hyundai Motor Am., Inc.*, 2022 WL 3137453, at *5 (C.D. Cal. July 12, 2022). Nor is the possibility of eardrum damage from a music player if it still plays music. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009). And courts routinely dismiss implied-warranty claims where plaintiffs fail to allege that a product is actually unfit for an ordinary purpose. *E.g.*, *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1179 (N.D. Cal. 2022); *Baldwin*, 78 F. Supp. 3d at 741–42; *Tietsworth v. Sears, Roebuck and Co.*, 2009 WL 3320486, at *12, *14 (N.D. Cal. Oct. 13, 2009).

Because plaintiffs evidently cannot allege facts showing that their WaveRunners are unfit for their ordinary purpose, the Court should deny their motion for leave to amend.

**C.    Plaintiffs still do not point to any false statements to support their fraud claims.**

Plaintiffs assert two types of fraud claims, one under the Illinois Consumer Fraud Act against both defendants and the other under the common law against Yamaha. Fraud claims are subject to the stringent pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including "specifically alleg[ing] the 'who, what, when, where, and how of the fraud.'" *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018).

The Court dismissed plaintiffs' fraud claims because they had not alleged any affirmative misrepresentation. Dkt. 49 at 9–13. The Court explained that the three supposed misrepresentations identified by plaintiffs—that WaveRunners are "luxury" products, that there are misleading statements in the owner's manual, and the existence of a fuel gauge on the WaveRunners—could not be the basis of a fraud claim. *Id.* In their new proposed complaint, Plaintiffs retain those allegations but shift their focus to a fact that is neither new nor false—that the WaveRunners have 18.5-gallon gas tanks. Nothing in the proposed complaint gets around the defects identified by the Court.

12

Start with the three theories of misrepresentation this Court has already rejected. First, the Court explained that assertions by Yamaha that the WaveRunners are "luxury" watercraft were nonactionable puffery. Dkt. 49 at 10. Plaintiffs' proposed complaint still notes in a few places that WaveRunners are described as "luxury" products. SAC ¶¶ 25, 26, 111. And they have included some more puffery: an advertisement (Exhibit E) describing "factory installed, integrated speakers for a clean look that's ready to roll" and highlighting the "premium comfort for all day riding" of the "Cruiser seat, cavernous storage, premium feature set and 1.8L engine" that make the WaveRunner "built to explore the water." SAC at 175; *see also* SAC ¶ 26. Those are exactly the sorts of statements that Illinois courts have long held are nonactionable. *See, e.g.*, *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 73 (2007) (statements such as "custom quality," "comfortable," and "high-quality" are nonactionable puffery). What's more, plaintiffs haven't identified any misrepresentation in this new puffery. That a WaveRunner is "built to explore the water" or is comfortable for "all day riding" doesn't say anything about how far it can go without refueling. A user could explore the water close to shore, all day long, with periodic refueling.

Second, the Court rejected plaintiffs' reliance on statements in the owner's manual because neither plaintiff alleged he received or reviewed the manual before buying his WaveRunner. Dkt. 49 at 10, 13. Plaintiffs' allegations about the manual remain unchanged, and plaintiffs still do not allege that they read the manual before buying. *See* SAC ¶¶ 23, 53, 73–81.

Third, the Court explained that the existence of a visible fuel gauge was not an actionable statement. Dkt. 49 at 11, 13. Plaintiffs have now alleged McHenry examined the WaveRunner on display at Nielsen before making the purchase, SAC ¶ 63, but that new allegation doesn't get around the Court's ruling that the mere existence of a visible fuel panel is not a representation that can serve as the basis of a fraud claim. Plaintiffs have attempted to get around that ruling by

reframing their complaint around the fact that Yamaha and Nielsen stated that the WaveRunners have 18.5-gallon gas tanks. *See* SAC ¶¶ 111, 124 ("Yamaha committed fraud when it represented that its watercraft has an 18.5 gallon fuel capacity."). But that representation is neither new nor false. Plaintiffs alleged in their last complaint that "Yamaha advertises the waverunners can hold 18.5 gallons of fuel." Dkt. 23 ¶¶ 17, 34. And although plaintiffs in their last complaint alleged, "[o]n information and belief," that this specification of an 18.5-gallon tank was "false, and the watercraft cannot hold that amount of fuel," *id.* ¶ 34, they have *removed* that allegation in their proposed amended complaint. Redline ¶ 41. Plaintiffs now only allege that "[t]he actual *useable* fuel capacity is less than 18.5 gallons." Redline ¶ 42 (emphasis added). But Yamaha never made a representation about *usable* fuel, only the total capacity. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965–66 (9th Cir. 2016) (holding that lip balm that disclosed the correct weight of product but not the usable weight did not mislead customers).

A true statement cannot be the basis for a fraud claim. For example, in *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001), the plaintiff argued that defendants fraudulently claimed that two medications (one over-the-counter and the other prescription) did not contain the same "medicine" and could not be substituted for each other. *Id.* at 937–38. The Seventh Circuit rejected this argument because none of the challenged statements "expressly ma[de] such a claim." *Id.* at 938. Instead, the statements said that the two drugs were "different medications," which was "completely true": the two drugs were "approved for very different maladies, went through different approval processes, and [we]re sold in different ways." *Id.* Another court, in part relying on *Bober*, also dismissed ICFA fraud claims where the labels describing the size of lumber pieces were "*literally* true." *Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *4 (N.D. Ill. Sept. 29, 2017). Similarly, in *Galanis v. Starbucks Corp.*, 2016 WL 6037962 (N.D. Ill. Oct. 14, 2016), the court

14

dismissed the ICFA and common-law fraud claims of a coffee drinker who sued Starbucks because the actual volume of coffee or tea in its iced drinks was less than the advertised "24 fluid ounces." *Id.* at *2–4. The court rejected the plaintiff's argument that if Starbucks advertised an iced drink as containing 24 fluid ounces, the drink "should have 24 ounces of fluid *plus ice.*" *Id.* at *3. A consumer would still understand the container size menu "to convey information regarding the *volume* of the cups its drinks come in, as opposed to the *contents* of the various drinks." *Id.*

Here, similarly, plaintiffs don't claim that their fuel tanks hold less than 18.5 gallons; they instead allege that "[t]he actual *useable* fuel capacity is less than 18.5 gallons." SAC ¶ 42 (emphasis added). Because the 18.5-gallon fuel tank specification is true, it cannot be the basis for statutory or common-law fraud. *See Bober*, 246 F.3d at 938.

There is another, independent reason why plaintiffs have not pleaded a fraud claim: They allege no facts showing either defendant knew about any supposed defect before plaintiffs bought their WaveRunners. Knowledge is an element of all fraud claims. *E.g.*, *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1165–66 (N.D. Ill. 2022); *Schwebe v. AGC Flat Glass N. Am., Inc.*, 2013 WL 2151551, at *5 (N.D. Ill. May 16, 2013). The only allegations concerning the knowledge of the defendants *postdate* plaintiffs' purchases. *E.g.*, SAC ¶¶ 44–46; SAC, Ex. F. Although plaintiffs have added allegations that Yamaha claimed it was working on a "fix for the fuel gauge concern," those allegations are based on Yamaha's response to Higgins' complaint with the Better Business Bureau, which postdates his purchase. SAC ¶ 59; SAC, Ex. H. After-the-fact internet posts are not enough to allege the presale knowledge essential to stating a fraud claim. *E.g.*, *Sherwin v. Samsung Elecs. Am., Inc.*, 2018 WL 11216896, at *5 (N.D. Ill. Mar. 2, 2018).

## III. CONCLUSION

The Court should deny plaintiffs' motion for leave to file a second amended complaint.

15

Dated:  September 10, 2024                                Respectfully submitted,

                                                         GIBSON, DUNN & CRUTCHER LLP

                                                         By:   ____/s/ Timothy W. Loose_____

Theane Evangelis (*pro hac vice*)
Timothy W. Loose (*pro hac vice*)
Daniel R. Adler (*pro hac vice*)
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
tevangelis@gibsondunn.com
tloose@gibsondunn.com
dadler@gibsondunn.com

Kevin Bugos
Smith Blake Hill LLC
20 North Clark Street
Suite 1700
Chicago, IL 60602
Telephone: (312) 471-8055
kbugos@sbh-law.com

*Attorneys for Yamaha Motor Corporation, U.S.A.
and Nielsen Enterprises, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin Bugos, an attorney, hereby certify that, on September 10, 2024, I electronically filed with the Northern District of Illinois – Eastern Division, via the Court's CM/ECF system, the foregoing opposition to plaintiffs' motion for leave to file an amended complaint, which caused it to be served upon the following counsel of record:

> Daniel A. Edelman
> Tara J. Goodwin
> Edelman, Combs, Latturner & Goodwin, LLC
> 20 South Clark Street, Suite 1500
> Chicago, IL 60603-1824
> courtecl@edcombs.com
>
> *Counsel for Plaintiffs*

*/s/ Kevin M. Bugos*