**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MITCHELL HIGGINS and TIM MCHENRY, individually and on behalf of similarly situated individuals,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 23 C 5611** |
| **YAMAHA MOTOR CORPORATION, U.S.A. and NIELSEN ENTERPRISES, INC.,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Mitchell Higgins and Tim McHenry have sued Yamaha Motor Corporation, USA and Nielsen Enterprises, Inc. on behalf of a class of similarly situated persons. Higgins and McHenry contend that Yamaha and Nielsen knowingly sold them defective WaveRunners. They assert claims for breach of written warranty, breach of implied warranty, violation of the Illinois Consumer Fraud Act, and common law fraud. This Court previously dismissed plaintiffs' claims for failure to state a claim. *Higgins v. Yamaha Motor Corp.*, No. 23 C 5611, 2024 WL 3509760, at *6 (N.D. Ill. July 23, 2024). Higgins and McHenry now seek leave to file a second amended complaint. For the reasons below, the Court grants the motion to amend with respect to the plaintiffs' breach of implied warranty claim and denies the motion for their remaining claims.

**Background**

Higgins and McHenry each purchased a new 2022 Yamaha FX Cruiser HO

FX1800F-XA personal watercraft (WaveRunner) from Nielsen Enterprises in 2022. Yamaha is the designer and manufacturer of the WaveRunner. Higgins and McHenry both contend that defects with the WaveRunner's fuel gauge and trip computer manifested upon first use. According to plaintiffs, the fuel gauge reads as "full" for the first few hours of riding before rapidly dropping to read near zero when the tank is still approximately 50–55% full. The fuel gauge then will again rapidly drop to read "empty" even though the tank is, according to plaintiffs, still 40–45% full. Plaintiffs also allege that the WaveRunner's trip computer, which tracks the distance traveled and gallons of fuel consumed, resets when the WaveRunner is turned off for short periods of time. According to plaintiffs, this defect makes it impossible to track the miles traveled and fuel consumed.

Due to these and other allegations, Higgins and McHenry filed suit against Yamaha and Nielsen. In their original and first amended complaints, they alleged that Yamaha and Nielsen violated the Illinois Consumer Fraud Act, that Yamaha committed common law fraud and breached its written warranty, and that Nielsen breached the implied warranty of merchantability. Yamaha and Nielsen both moved to dismiss these claims. The Court granted the motion to dismiss but gave plaintiffs leave to amend so long as they could "stat[e] at least one viable claim over which the Court has subject matter jurisdiction." *Id.*

### Discussion

A district court should freely grant leave to amend a complaint "when justice so requires," Fed. R. Civ. P. 15(a), "[u]nless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Barry Aviation Inc. v. Land*

*O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004).  An amendment is futile if it "restat[es] the same facts using different language, reassert[s] claims previously determined, fail[s] to state a valid theory of liability, and [is unable] to survive a motion to dismiss."  *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) (internal citations omitted).  Accordingly, a district court should deny leave to amend when the proposed amendments do not "push the original claim into the realm of plausibility."  *O'Boyle v. Real Time Resols., Inc.*, 910 F.3d 338, 348 (7th Cir. 2018).

## A.    Breach of implied warranty

The Court finds that the only claim plaintiffs have pushed into the realm of plausibility in their proposed second amended complaint is the claim for breach of implied warranty.  In Illinois, "a warranty that . . . goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  810 ILCS 5/2-314.  To state a claim for breach of implied warranty of merchantability, plaintiffs must plausibly allege that the goods were not of merchantable quality at the time of sale.  For goods to be merchantable, they must, among other things, "pass without objection in the trade under the contract description," be "fit for the ordinary purposes for which such goods are used," and "conform to the promises or affirmations of fact made on the container or label if any."  *Id.*

In their proposed second amended complaint, Higgins and McHenry contend that both Yamaha and Nielsen represent on their respective websites that the WaveRunner has an 18.5-gallon fuel capacity.  Second Am. Compl. ¶ 17.  According to plaintiffs, however, the fuel gauge will "rapidly drop off to read near zero when the fuel tank is still approximately 50–55% full" and will then "rapidly drop off to 'empty' when the fuel tank

is still 40–45% full."  *Id.* ¶ 28.

Plaintiffs have now plausibly alleged that the WaveRunner is not fit for its ordinary purpose.  Specifically, they plausibly contend that it is not possible to tell how much fuel remains in the fuel tank past the halfway mark.  Additionally, plaintiffs contend that once the fuel gauge drops to "empty," a "low fuel warning alarm will sound" despite the tank being 40–45% full.  *Id.* ¶ 28.  A reasonable person would end their trip once the low fuel alarm sounds rather than continue and risk being stranded.  If the low fuel alarm is sounding prematurely, as plaintiffs allege, this plausibly supports a claim that the WaveRunner, with its 18.5-gallon fuel capacity, is not fit for its ordinary purpose: riding for a duration of time commensurate with 18.5 gallons of fuel.

Accordingly, plaintiffs may maintain their claim for breach of implied warranty.

**B.    Breach of written warranty and fraud**

Higgins and McHenry have not sufficiently alleged new facts that make their other claims plausible.  Thus, for the reasons stated below, the Court denies leave to amend for the breach of written warranty, statutory fraud, and common law fraud claims.

Regarding the claim for breach of written warranty, Higgins and McHenry contend that by failing to timely repair the defective fuel gauge, Yamaha has failed to adhere to the written warranty, which provides that new WaveRunners "will be free from defects in material and workmanship" for one year from time of purchase.  Second Am. Compl. ¶ 16; *see also* Pls.' Mot. for Leave to File Second Am. Compl., Ex. A at 1. According to the proposed second amended complaint, Higgins received word from Yamaha that it was "working diligently on a fix for the fuel gauge concern" and that "[o]ne of our Yamaha representatives will make contact with you to discuss your

concerns more in depth." Second Am. Compl. ¶ 59. Plaintiffs contend that "[t]he fact that Yamaha claimed that it was working on a fix was an admission that the nature of the problem was one covered by the warranty." *Id.* ¶ 60.

This argument sweeps too broadly. The express terms of the warranty state that it covers "defects in material and workmanship" and that Yamaha "makes no other warranty of any kind, expressed or implied." Pls.' Mot. for Leave to File Second Am. Compl., Ex. A at 1–2. Therefore, Yamaha's only requirement under the written warranty is to repair or replace "any part adjudged defective by Yamaha due to faulty workmanship or material from the factory." *Id.* at 1. But this does not mean that if Yamaha elects to repair or replace a part at any time during the warranty period, the repair or replacement is covered by the warranty. Rather, the only repairs or replacements covered by the warranty are those involving "any part adjudged defective . . . due to faulty workmanship or material from the factory." *Id.*

Plaintiffs argue that Yamaha has waived any limitation contained in the WaveRunner warranty through its statement to Higgins that it is working on a fix. But reading that as a waiver would upend basic principles of contract law. Seventh Circuit precedent supports the Court's reasoning on this issue. "Waiver in contract law is the intentional relinquishment of a right," and "[i]f not properly contained, the doctrine of waiver can seriously damage the security and predictability that the law provides for parties to a written contract." *Knopick v. Jayco, Inc.*, 895 F.3d 525, 530 (7th Cir. 2018) (citation and quotation marks omitted). Preventing this is particularly important in cases like this because "[i]n business generally and in consumer markets, a contracting party's willingness to go beyond her strictly enforceable legal obligations is a key commercial

lubricant." *Id.* at 531. Thus allowing plaintiffs' waiver argument to stand would risk "discourag[ing] low-cost and amicable resolutions to minor commercial disputes," *id.* at 531, because Yamaha may in the future refuse to make repairs that fall outside the warranty out of fear that doing so would expose it to liability.

Plaintiffs fare no better in seeking to amend their fraud claims. To state a claim under the Consumer Fraud Act for deceptive acts or practices, "a plaintiff must [plausibly allege] that: (1) the defendant engaged in a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the act or practice; and (3) the act or practice occurred in the course of conduct involving a trade or commerce." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). Under the CFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Id.* Accordingly, a true statement cannot be the basis for a fraud claim. *See, e.g.*, *id.* (finding that statements discouraging substitution of one drug for another merely discouraged doing so without consulting one's physician and did not indicate that the two drugs literally could not be substituted); *Fuchs v. Menard, Inc.*, No. 17 C 1752, 2017 WL 4339821, at *4 (N.D. Ill. Sept. 29, 2017) (dismissing a claim under the FCA because the labels at issue contained information that was "*literally* true") (emphasis in original).

Plaintiffs contend that Yamaha and Nielsen both advertise the WaveRunner has an 18.5-gallon fuel capacity but that the fuel alarm defect means that the *usable* fuel capacity is less than 18.5 gallons. Therefore, plaintiffs allege, Yamaha and Nielsen have committed fraud. This contention fails for one simple reason: plaintiffs have not alleged that the *actual* fuel capacity is less than what Yamaha and Nielsen represent. To put it another way, plaintiffs' allegations that the full tank capacity is effectively

6

unusable due to the low fuel alarm defect say nothing about the tank's true capacity. Because plaintiffs have failed to allege any facts that would plausibly show that the fuel tank capacity is less than 18.5 gallons, they have failed to state a plausible claim for statutory or common law fraud. Granting leave to amend would be futile with respect to these claims.

### Conclusion

For the foregoing reasons, the Court grants plaintiffs' motion for leave to file a second amended complaint with respect to their breach of implied warranty claim and otherwise denies plaintiffs' motion [dkt. no. 51]. The parties are directed to promptly confer regarding a schedule for discovery and pretrial proceedings and are to file by December 4, 2024 a joint status report that includes a proposed schedule (or alternative proposals if the parties cannot agree).

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 2, 2024

7